**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| DOUBLEDAY ACQUISITIONS LLC d/b/a CSAFE GLOBAL, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case 1:21-cv-03749-SCJ |
| ENVIROTAINER AB, and ENVIROTAINER INC. | ) ) ) ) | |
| Defendants. | ) | |

**ENVIROTAINER'S RESPONSE IN OPPOSITION TO**
**CSAFE'S MOTION TO DISREGARD**

## INTRODUCTION

CSafe's Motion to Disregard prioritizes overzealous advocacy and insult at the expense of professionalism and truth, which distills to one root point: CSafe is terrified for this Court to actually decide its preliminary injunction motion on the merits, and will come up with anything it can to avoid a merits-based ruling that would underscore the baseless nature of that motion and damage its credibility.

Make no mistake about it, CSafe's brief is based entirely on something it fabricated—what it calls an "Adjusted Brief." But the "Adjusted Brief" is just that—adjusted—and is ***not*** the brief Envirotainer submitted. The question is not whether CSafe can manipulate Envirotainer's brief to make it longer than it actually was, but instead whether Envirotainer complied with the Local Rules.

It did. At bottom, CSafe's motion suffers from the same "ready, fire, aim" approach as CSafe's preliminary injunction motion. Specifically, CSafe falsely accuses Envirotainer of (i) using something other than 14 point font; (ii) condensing its font and character spacing; and (iii) spacing its brief with "1.74 spacing," not double spacing. Each of those points is addressed fully below.

More important, CSafe's frivolous motion needlessly wastes judicial (and party) resources that could be better spent elsewhere. CSafe has demonstrated a habit of unwisely rushing to the Court to seek unjust and extreme relief it does not deserve, rather than first try to learn the truth before it acts. CSafe's motion should not have been filed in the first place, so it certainly should be denied now.

## ARGUMENT

### I.   Envirotainer Used Fourteen Point Font

Contrary to CSafe's insinuation otherwise, every character in Envirotainer's opposition is 14-point font (*see* Howell Dec. at ¶ 6). That should have been clear from the Local Rule 7.1(D) Certification, where one of Envirotainer's "Officers of the Court" attested to that fact. On receipt of CSafe's motion, Envirotainer again confirmed this fact (Howell Dec. at ¶¶ 7-8). As shown in the excerpts below, Envirotainer used Times New Roman 14-point font, and ***only*** Times New Roman 14-point font (*id.*). CSafe's argument otherwise is frivolous, as is its incorrect assertion that Envirotainer's counsel lied to the Court in their Certification of Compliance (Br. at 1-2, 4). There is no evidentiary support for this portion of CSafe's motion, and therefore it should promptly be withdrawn by CSafe before CSafe's reply, and before the Court rules on it. *See* Fed. R. Civ. P. 11(b)(3), (c)(1).

**Fig. 1: Envirotainer's 14-point Introduction**

### INTRODUCTION

CSafe asks this Court for extraordinary relief: to put the Court's thumb on the scales of competition between the parties before trial, and prevent Envirotainer from leasing its Releye® brand containers—even though CSafe has been aware of them for almost a year and admits they have had little market impact during that time. As shown below, ***none*** of the four preliminary injunction factors weigh in CSafe's favor.

*First*, CSafe is unlikely to succeed on the merits. All "exemplary" patent

**Fig. 2: Envirotainer's 14-point Procedural Background**

### PROCEDURAL BACKGROUND

CSafe alleged Envirotainer infringed the '511 Patent over **nine** years ago in March 2013 (Ex. 1). That letter asserted Envirotainer's RAP-sized e2 container infringed C〔...〕, among "several" others that "may" cover that

**Fig. 3: Envirotainer's 14-point Argument**

### ARGUMENT

A preliminary injunction is a "**drastic** and **extraordinary** remedy that is not to be routinely granted." <u>Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.</u>, 357 F.3d 1319, 1324 (Fed. Cir. 2004)〔...〕 *see also Chem. Eng'g Corp. v. Marlo,*

## II.   Envirotainer Used Normal Characters and Text Spacing

Envirotainer did not "artificially condense the spacing within lines of text," as CSafe also falsely accuses (Br. at 3). As shown below, the font scale, spacing, position are all "100%" and "normal" (Howell Dec. at ¶¶ 10-12).

**Fig. 4: Envirotainer used full scale font and normal spacing.**

### A.   CSafe's Years-Long Delay Belie Irreparable Harm.



〔pr〕eliminary injunction "negat[es] the idea of irreparability." 〔...〕381. Waiting "even only a few months" to move for a 〔...nec〕essarily undermines a finding of irreparable harm." 〔..., Inc.〕, 840 F.3d 1244, 1248 (11th Cir. 2016). "Delay, or

Once more, CSafe's argument to this Court is frivolous because it lacks any evidentiary support. Thus, its argument about character scale and spacing should be promptly withdrawn before CSafe's reply and before the Court's order to avoid further waste of judicial and party resources. *See* Fed. R. Civ. P. 11(b)(3), (c)(1).

### III.    Envirotainer Used Double Spacing

Envirotainer used precise 28 point double-spacing throughout its brief, except for footnotes, headings, and block quotes. CSafe, however, argues that Envirotainer used "approximately 1.74-spacing" (Br. at 1).

Again, not so. For a 14-point font, like the one Envirotainer used, one space is 14 points, and double spacing is therefore 28 points.[1] *See, e.g.*, *Sameer v. Khera*, No. 1:17-cv-01748, 2018 U.S. Dist. LEXIS 120110, at *4 (E.D. Cal. July 17, 2018) ("the line spacing of such documents . . . must be double-spaced meaning, at minimum, 24-point *line spacing*" for 12 point font) (emphasis in original).

Thus, for a 14 point font, that "1.74-spacing" would equate to 24.36 point spacing (14 point font x 1.74 spaces = 24.36 point spacing). That is simply not what Envirotainer used—as shown below, it used exact 28 point spacing which, by definition, is double spaced (14 point font x 2 spaces = 28 point spacing) (Howell Dec. at ¶¶ 11-14).

---

[1] "Points" for fonts and spacing are just a measurement of length, with seventy-two points equal to one inch.

**Figure 5: Envirotainer's Exact 28-Point Spacing**



Indeed, Plaintiffs' counsel—Fenwick & West—follows this very "exact spacing" typography: it argued to the Eastern District of Virginia, concerning a 12 point font, that "in the federal courts where Cox's lead counsel (Fenwick & West) typically practice, the local rules *equate Exactly 24-point spacing and double-spaced, and so it is Fenwick's standard practice to draft briefs with Exactly 24-point spacing*."[2] (Dkt. 63-1 at 1 (emphasis added); *see also id.* at 2 ("Thus, many federal courts—including those where Fenwick's lawyers most frequently appear—equate 'double-spacing' with Exactly 24-point spacing . . . .")).

Envirotainer submits that CSafe's counsel's "standard practice" for double spacing is the correct understanding of double spacing, and is also the same one that Envirotainer used in its brief. There was nothing nefarious about using it,

---

[2] *See BMG Rights Mgmt. (US) LLC et al. v. Cox Enterprises, Inc. et al.*, No. 1:14-cv-01611, at Dkt. 333 (filed September 24, 2015).

contrary to CSafe's attempt to put Envirotainer's counsel on trial (Howell Dec. at

¶¶ 15-28). To the contrary, it is the only way to ensure exact double spacing.

This is not just CSafe's and Envirotainer's counsel's understanding, either.

As one leading lawyer typography treatise[3] provides:

> Most courts adopted their line-spacing standards in the typewriter era.
> That's why court rules usually call for double-spaced lines. On a
> typewriter, each line is the height of the font, thus double spacing
> means twice the font size. ***So if you're required to use a 12-point
> font, double line spacing means 24 points.***

(Ex. 1 at 2 (emphasis added).)

That treatise author, Mr. Butterick, also provided the following guidance on

double spacing according to the rules of the Court of Appeals of Georgia and the

Supreme Court of Georgia, which was published in the Winter 2013 State Bar of

Georgia Newsletter for the Appellate Practice Section:

> ***Double spacing means line spacing that's twice as large as the point
> size.*** Single spacing means line spacing that's the same as the point
> size. Beware of your word processor's pre-fabricated "Double" and
> "Single" line-spacing options, which typically add extra space. ***For
> instance, at a 14-point font size, Microsoft Word's "Double" line
> spacing is about 33 points, when it should be 28 points.***

---

[3] The Butterick treatise has been cited approvingly by numerous district courts, including at least one in the Eleventh Circuit. *E.g.*, *Khan v. BankUnited, Inc.*, No. 8:15-cv-2632, 2017 U.S. Dist. LEXIS 222627, at *2 (M.D. Fla. Jan. 11, 2017); *Williams v. Bank of Am., N.A.*, No. 15-cv-1597, 2016 U.S. Dist. LEXIS 187624, at *17 (C.D. Cal. Sept. 26, 2016); *Highland Holdings, Inc. v. Mid-Continent Cas. Co.*, No. 8:14-cv-1334, 2016 U.S. Dist. LEXIS 81851, at *2 n.1 (M.D. Fla. June 23, 2016); *Roberts v. Blue World Pools, Inc.*, No. 3:15-cv-00335, 2015 U.S. Dist. LEXIS 121213, at *7 (W.D. Ky. Sept. 11, 2015).

(Ex. 2 at 2 (emphasis added).)

Fenwick cited a different typography reference in its Virginia brief, but it stands for the same proposition that double spacing means double the font size:

> USE TRUE DOUBLE SPACING FOR BETTER BRIEFS
>
> \*      \*      \*
>
> Most courts require us to double space our briefs. CR 76.12(4)(a)(ii) requires us to use "black type no smaller than 12 point" and typing that is "double spaced and clearly readable." The court's requirement to double space your briefs does not mean, however, that you just go into Microsoft Word and pound the "double space" button. ***True double spacing for a 12-point font means setting your line spacing at "Exactly" 24 points.***

(Ex. 4 at 7-8 (emphasis added).) Clearly the notion that Envirotainer used "1.74 spacing" in contravention of the Local Rules is false.

Once Envirotainer put CSafe on notice that it did not use 1.74 spacing, CSafe recognized its error and changed positions. It now argues—contrary to Fenwick's "standard practice"—that only Microsoft's default spacing meets the Local Rules (since that is presumably what CSafe used for the "adjusted" brief) (*see* Dkt. 62 at 2).

If so, that would go directly against what Fenwick told the Virginia Court: "[t]hat [Microsoft] default-setting actually results in 15% more space between lines than is required to double-space 12-point type" (Dkt. 63-1 at 3; *see also* Ex. 1 at 2 ("Curiously, the so-called 'double' line-spacing option in your word processor doesn't produce true double line spacing. Microsoft Word's 'double' spacing, for

instance, is about 15% looser, and it varies depending on the font. To get accurate spacing, you should always set it yourself, exactly."); Ex. 4 at 7 ("Using Microsoft Word's default "double space" will give you line spacing greater than 24 points–about 15% greater, in fact")).

Indeed, Microsoft itself has acknowledged its default spacing is not actually double spacing. When Microsoft changed Word's default spacing in 2006, it noted that "[w]e also added a bit of space between each line within the paragraph. Though some folks have described this as 'double-spaced,' it is actually 115% of the line height . . . . " (Ex. 3).

As Fenwick then-argued to the Virginia Court, "this Court's local rules should not be interpreted as strictly as Plaintiffs now contend." *Id.*[4] The same is true here. Tying "double spacing" to equal only Microsoft Word's default spacing, as opposed to what double spacing actually is, permits a private third party—one which often is a litigant before this very Court—sole control over the Court's requirements. It also would effectively require litigants to purchase a license to Microsoft Word, since other word processing spacing may be different than the default spacing provided by Microsoft.

---

[4] The Virginia Court ultimately ruled that defendant Cox's position was "justified," but nevertheless asked it to submit a new summary judgment brief that was roughly the same length as the plaintiff's own summary judgment brief to cure any possible prejudice. Here, any alleged prejudice could be cured by permitting CSafe to use "exact 28-point" spacing in its reply brief, as is Fenwick's standard practice.

That raises a different problem as well: defining double spacing by a Microsoft default setting (as opposed to an objective measurement) injects inconsistency into what should be easy math (i.e., double spacing means exactly double the font size: 28 points for 14 point font). As shown above and in the cited references, Microsoft's default spacing has changed over time, changes based on the font that is used, and even if it was constant the Court should not treat differently line spacing in briefs that (i) were typed on a typewriter (where double spacing is necessarily double the font size); (ii) use Microsoft Word; or (iii) use other word processing software.

This issue was resolved recently by the United States District of Kansas, and Envirotainer respectfully submits the Court should follow that court's approach. There, the plaintiff had argued that defendants' summary judgment and *Daubert* briefs violated double-spacing rules: namely, because defendants had used "exactly 24" line spacing. *In re Epipen Epinephrine Injection*, 2020 U.S. Dist. LEXIS 133290, at *35-*36 (D. Kan. July 28, 2020).

The Kansas Court noted submissions—similar to what Fenwick did in the *BMG* case—of a typography treatise, case law, and other evidence about how Microsoft Word had changed its line spacing over time. *Id.* That court elected not to decide the issue, but instead "opt[ed] for a practical solution: [t]o the extent defendants' use of the 'Exactly 24' line spacing gave them more room to make

their arguments while still complying with the court's page limitations, plaintiffs may avail themselves of the same benefit." *Id.* at *36.

The Kansas Court "refuse[d] to strike defendants' briefs, or order defendants to refile their briefs." *Id.* Rather, the Kansas Court stated that the attempt to strike a brief based on a double-spacing dispute "dishonors Rule 1's admonition that parties should employ the Federal Rules of Civil Procedure to 'secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.*

The Kansas Court's citation to Rule 1 is well taken: the parties should not be squabbling over font size, font spacing, and line spacing, and certainly not in motions to the Court. Regrettably, CSafe did not raise any of these specific issues with Envirotainer before CSafe filed its brief (instead, alleged noncompliance was only generally alluded to on a 4:30 pm meet and confer about CSafe's refusal to provide noticed depositions, which took place shortly before CSafe's 5:52 pm filing). Had it done so, Envirotainer would have clarified to CSafe which "facts" it got wrong, and endeavored to reach an agreement between the parties that could have avoided burdening the Court with frivolous and needless motion practice.

## IV.    CSafe's Proposed Remedies Are Draconian and Inequitable

The remedies CSafe seeks are severe, and certainly not warranted in view of numerous incorrect assertions on which its brief is based. Despite CSafe's at-times personal attacks, at no point did Envirotainer seek to evade the Court's page limitations—rather, it simply used spacing that it believes is correct, and which CSafe's counsel has represented to a sister court is their "standard practice."

Further, even if this Court determines that only Microsoft's default spacing (and not exact double spacing) complies with the Local Rules, the best course is to provide clarity for the parties in the future, and not to limit its consideration of the merits of CSafe's requested injunction. Any alleged prejudice has been completely resolved by the Court's Extension Order, which provided CSafe with an additional seven pages and seven days to respond to Envirotainer's opposition (Dkt. 64).

That course is more appropriate than CSafe's extreme first position: that the Court disregard Envirotainer's brief entirely, in apparent hopes the Court will award it an effective default injunction.

It is also more appropriate than CSafe's alternative remedy: to both (i) rescind the Order that found 35 pages were justified in view of the significant number of issues raise by CSafe's preliminary injunction request and (ii) grant CSafe an excessive (and currently indeterminate) 21-day extension from the Court's future Order on CSafe's motion—an extension that would prejudice Envirotainer's ability to prepare and address CSafe's Reply at the May 13 hearing. For example, yesterday the Court ordered that CSafe is permitted to file its preliminary injunction reply by April 29. But if the Court next week grants CSafe's alternative 21-day extension, that reply would not be due until the week of the May 13 hearing, and possibly only a day or two before.

Again, Fenwick in the prior *BMG* case was prescient: "The relief that Plaintiffs seek is inappropriate. Plaintiffs have not cited a single case where a court

11

struck summary judgment or *Daubert* briefs in similar circumstances" (Dkt. 63-1 at 7). So too here. Envirotainer is not aware of any case from ***this*** Court where a brief was stricken for exact 28-point double spacing, nor does CSafe cite any.

Indeed, that is because the Eleventh Circuit has a "strong preference that cases be decided on the merits, not by default." *See Sundy v. Friendship Pavilion Acquisition Co., 2019 U.S. Dist. LEXIS 232479* (Jones, J.); *see also Krush Communications, LLC v. Lunex Telecom., Inc.*, 2014 U.S. Dist. LEXIS 189254 (N.D. Ga. Sep. 12, 2014) (Jones, J.) ("Federal courts typically view motions to strike with disfavor, and a motion to strike is not the proper vehicle for resolving disputed issues of fact, or for deciding 'substantial questions of law.'").

This is simply not the case CSafe makes it out to be: there was no "brazen" attempt to get around a Court Order or an otherwise "flagrant violation." Envirotainer did not "masquerade[e]" its brief as anything it was not or "glaringly flout" the Court's Docket Order—it did not use a "slightly less" than 14 point font or 1.74 spacing, or "artificially condense[] spacing within lines of text."

The cases CSafe cites are not close to this one. *Aldridge* did not concern any of the issues here: instead the Court held a party could not incorporate by reference the "Statement of the Facts" and "Argument and Citation of Authority" sections from a prior brief into its current brief. *See Aldridge v. Travelers Home & Marine Ins. Co.*, No. 16-cv-1247, 2019 U.S. Dist. LEXIS 230313, at *1-*4 (N.D. Ga. Feb. 21, 2019). It did not address whether exactly 28-point double spacing is considered

double spacing under the Local Rules. Nor did the Court even exclude the challenged brief; instead it held it would not consider either improperly incorporated materials or two facts from a summary judgment brief that were not also included in the underlying Statement of Material Facts. *Id.* at *4.

*Smith-Jackson* is also inapposite. There, the defendant's "egregious" conduct included filing thirty-eight page objections to a Magistrate's R&R that (i) were late; (ii) were thirteen pages over the limit (where defendant did not seek leave to extend the page limit until the day of the filing, well short of the ten day advance requirement of the applicable Standing Order); (iii) used inconsistent font size and type throughout; (iv) had left margins less than one inch; (v) were not double-spaced;[5] and (vi) included new evidence and argument not before the Magistrate Judge. *Smith-Jackson v. Chao*, 2017 U.S. Dist. LEXIS 132139, at *10-*13 (N.D. Ga. Aug. 18, 2017). Here, however, Envirotainer's brief (i) was timely; (ii) was extended in advance by the Court; (iii) used only 14-point Times New Roman throughout; (iv) had left margins of one inch and top margins of one-and-one-half inches; and (v) was double-spaced (Howell Dec. at ¶ 29).

CSafe especially stretches to analogize *Smith-Jackson* to this case. It argues that both that case and this one involve "two bites at the proverbial apple," but that assertion is illogical. In *Smith-Jackson* the defendant filed ***two*** briefs: Objections

---

[5] For example, some pages of that non-compliant brief had up to 26 lines of text per page (*see* No. 1:15-cv-1688, Dkt. 89 at 26, 28), whereas Envirotainer's double-spaced brief at most had 22 lines of text on a page (*see, e.g.*, Dkt. 55-2 at 31).

and Corrected Objections, with the latter submitted to, *inter alia*, fix nonconformance with Local Rule 7.1(D). *Id.* at *8-*9. The "second bite" was the Corrected Objections, which were still non-compliant. *Id.* at *9-*13.

Here, there were not two briefs:[6] the only brief subject to CSafe's motion is Envirotainer's preliminary injunction opposition. CSafe mentions "both" of Envirotainer's filings, but CSafe does not say what the second one is. Thus, even if the use of exact 28 point double spacing does not comply with the Local Rules, these are not "serial and conspicuous violations" as CSafe exaggerates. There is certainly not an "unlevel playing field" that is "substantially tilted" to CSafe's disadvantage, particularly in view of its additional seven pages and days to reply.

Nor is CSafe's alternative relief warranted. Even assuming CSafe is right on line spacing (and that the rules require Microsoft's default 33 point spacing instead of exact 28 point spacing for a 14 point font), punishing Envirotainer by forcing it to delete an additional ten pages of its brief is not reasonable—especially since the Court already determined that 35 pages were appropriate given the number and importance of issues posed by CSafe's requested injunctive relief. As noted above, nor should the Court entertain CSafe's attempt to again extend its reply brief

---

[6] While Envirotainer did submit a substitute version of its public brief on April 5, that was to redact three words that CSafe asserted were confidential, not to change Envirotainer's under-seal brief, and not to address CSafe's then-unraised arguments in its subsequent April 8 motion to exclude.

deadline (this time by 21 days from any order on this issue, an extension that may have been the real reason behind CSafe's motion (*see* Dkt. 63)).

To the extent there actually is any potential prejudice by Envirotainer's use of exact 28-point double spacing that is not resolved by the Court's Order from yesterday (Dkt. 64), it could easily be cured by CSafe's use of the same double spacing in its reply—after all, it is Fenwick's "standard practice" to use that double spacing—instead of resort to Microsoft's default spacing.

## V.    CSafe Has Violated The Local Rules

Even if the use of exactly 28-point double spacing is viewed by the Court as noncompliant, CSafe's motion to disregard should not be granted because its preliminary injunction motion violates the Local Rules of this Court.[7] Local Rule 7.1(A)(2) required CSafe to file its preliminary injunction motion within thirty days after the beginning of discovery, unless it obtained prior permission of the Court to file later. It did not comply with that rule—having delayed that motion until two months after discovery started, and having filed it without seeking leave

---

[7] Throughout this case CSafe has demonstrated loose adherence to the local rules. Just as a few examples: CSafe (i) claimed an earlier patent priority date in its preliminary injunction request that contradicts its Local Patent Rule 4.1(b)(5) contentions; (ii) without leave of Court filed a "supplemental brief in opposition" to Envirotainer's motion to stay (after CSafe's full-length, twenty-five page opposition) (Dkt. 37); (iii) did not serve Envirotainer with unredacted versions of its preliminary injunction filing until several days after that filing; and (iv) objected to Envirotainer's page extension request as "untimely," even though it was made five days in advance of the local rule deadline (Dkt. 12 at 5).

(*see, e.g.*, Dkt. 22 at 6 ("All other motions must be filed WITHIN THIRTY DAYS"); Dkt. 22-1 at 2)).

CSafe has tried to justify that failure by citing the Court's Instructions (Dkt. 12), but those Instructions provide only that a preliminary injunction request must be made by a separate motion, accompanied by a proposed order, and will not be considered if it is found only in a complaint (*id.* at 5). If anything, that should have put CSafe on notice that its September 2021 Complaint was insufficient for a preliminary injunction request (*see* Dkt. 1 at ¶ 101 & p. 32 (Demand F.)), and that it should not have waited ***six months*** after that to seek injunctive relief.

Accordingly, to the extent the Court wishes to strictly enforce the Local Rules, as CSafe contends it should (*see* Br. at 5-6), Envirotainer respectfully submits that its first course of action should be to deny CSafe's preliminary injunction motion outright for noncompliance with both Local Rule 7.1(A)(2) and the Court's Preliminary Report and Discovery Plan entered in this case (Dkt. 22 at 6-7). Such a ruling would make CSafe's motion to disregard moot, since no preliminary injunction would be pending.

## CONCLUSION

For these reasons set forth above, Envirotainer respectfully requests the Court deny CSafe's Motion to Disregard.

16

Dated: April 14, 2022          Respectfully submitted,
                               */s/ Wesley C. Achey*
                               Wesley C. Achey
                               Georgia Bar No. 141284
                               Matthew W. Howell
                               Georgia Bar No. 607080
                               Siraj M. Abhyankar
                               Georgia Bar No. 484680
                               Thomas F. Finch
                               Georgia Bar No. 637008
                               ALSTON & BIRD LLP
                               One Atlantic Center
                               1201 W. Peachtree St., Suite 4900
                               Atlanta, GA 30309-3424
                               Phone:   404.881.7000
                               Fax:     404.881.7777
                               wes.achey@alston.com
                               matthew.howell@alston.com
                               shri.abhyankar@alston.com
                               thomas.finch@alston.com


                               Andrew J. Ligotti (*pro hac vice*)
                               ALSTON & BIRD LLP
                               90 Park Avenue, 15th Floor
                               New York, NY 10016
                               Phone: 212.210.9400
                               Fax: 212.210.9444
                               andy.ligotti@alston.com

                               **Attorneys for Defendant
                               Envirotainer AB, and Envirotainer Inc.**

17

**LOCAL RULE 7.1(D)**
**CERTIFICATE OF FONT COMPLIANCE**

I hereby certify that the foregoing has been prepared with one of the font and

point selections approved by the Court in Local Rule 5.1(C), Northern District of

Georgia, specifically Times New Roman 14 point.


Dated: April 14, 2022           */s/ Wesley C. Achey*
                                Wesley C. Achey
                                Georgia Bar No. 141284
                                ALSTON & BIRD LLP



**CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the foregoing document with the

Clerk of Court using the CM/ECF filing system, which will automatically send e-

mail notification of such filing to all counsel of record.


Dated: April 14, 2022           */s/ Wesley C. Achey*
                                Wesley C. Achey
                                Georgia Bar No. 141284
                                ALSTON & BIRD LLP